**EXHIBIT D**

1 Marc J. Kesten, Esq. (SBN: 152741)
2 Legal@VPXsports.com
Vital Pharmaceuticals, Inc.
3 1600 North Park Drive
Weston, FL 33326
4 Telephone: (954) 641-0570
Facsimile: (954) 389-6254
5

6 Attorneys for Defendants,
7 Vital Pharmaceuticals, Inc. and John H. Owoc

8 **UNITED STATES DISTRICT COURT**
9
**CENTRAL DISTRICT OF CALIFORNIA**
10

11 MONSTER ENERGY COMPANY, a    )   Case No. 5:18-cv-01882-JGB (SHKx)
Delaware corporation,                      )
12                                                      )   **DEFENDANTS VITAL**
                                                        )   **PHARMACEUTICALS, INC. AND**
13              Plaintiff,                          )   **JOHN H. OWOC'S NOTICE OF**
                                                        )   **MOTION AND MOTION (1) TO**
14        vs.                                       )   **DISQUALIFY COUNSEL, (2) FOR**
                                                        )   **STAY PENDING RESOLUTION**
15                                                      )   **OF DISQUALIFICATION ISSUE,**
VITAL PHARMACEUTICALS, INC.,   )   **AND (3) FOR MONETARY**
16 d/b/a VPX Sports, a Florida            )   **SANCTIONS**
corporation; and JOHN H. OWOC,    )
17 a.k.a. JACK OWOC, an individual,   )
                                                        )   Hearing Date:   November 26, 2018
18                                                      )   Hearing Time:   9:00 a.m.
              Defendants.                         )   Location:          Hon. Jesus G. Bernal
19                                                      )                         3470 Twelfth Street
                                                        )                         Courtroom 1
20                                                      )                         Riverside, CA 92501
                                                        )
21                                                      )
                                                        )
22                                                      )
                                                        )
23 _____ )

24

25

26

27

28
_____
**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY, ETC.**

# NOTICE OF MOTION AND MOTION

**Please take notice** that, on **November 26, 2018**, at **9:00 a.m.**, or as soon thereafter as this matter may be heard, in the courtroom of the **Honorable Jesus G. Bernal**, located in the United States Courthouse, 3470 Twelfth Street, Riverside, CA 92501, Defendants, Vital Pharmaceuticals, Inc., d/b/a VPX Sports ("VPX"), and John H. Owoc ("Owoc"), will and hereby do move this Court to disqualify Attorney Marc P. Miles, Esq. ("Miles"), and the firm of Shook, Hardy & Bacon L.L.P. ("SHB") from their continued representation of Plaintiff, Monster Energy Company ("Monster"), because such representation constitutes an impermissible conflict of interest given Miles' representation of VPX in a prior "substantially related" action and Miles' receipt of VPX's confidential information in that prior action. Defendants also move for a stay pending a resolution of this motion for disqualification, which implicates the integrity of the entire proceeding and a potential <u>pro se</u> corporate-litigant. Additionally, Defendants move for the fees and expenses incurred in bringing this motion to obtain a clear-cut mandatory disqualification.[1]

Defendants' motion is based on this Notice, the accompanying Memorandum of Points and Authorities; the Declarations of Marc J. Kesten, Esq., Erica W. Stump, Esq., and John H. Owoc filed concurrently herewith; the proposed Order filed concurrently

---

[1] Defendants' response to the Complaint is currently due by November 21, 2018. (Dkt. # 14). This motion is not being filed as a "first defensive move" involving a responsive pleading under Federal Rule of Civil Procedure 7 or as a motion to dismiss under Federal Rule of Civil Procedure 12. This motion is being filed instead to promptly appraise the Court of a matter of great importance regarding the ethical propriety of a lawyer's continued participation in this case and the administration of justice. To be clear, Defendants reserve the right to assert any responsive pleading available under Rule 7 as well as any defenses available under Rule 12 pending a resolution of this motion. <u>See, e.g.</u>, <u>Star Fabrics, Inc. v. Zappos Retail, Inc.</u>, Case No. CV 13-00229, 2013 WL 12124096, at *8 n.20 (C.D. Cal. July 19, 2013) (finding no waiver of Rule 12(b) defenses where the submission at issue does not constitute a "pleading" under Rule 7(a) or a Rule 12 motion).

herewith; the pleadings, files, and records of the Court; and such other matters as may be presented at the hearing of this motion.

This motion is made following a series of prefiling conferences of counsel pursuant to L.R. 7-3, which took place on October 18, 22, and 25, 2018. (Declaration of Marc J. Kesten, Esq. ("Kesten Decl.") (attached as Exhibit "A" hereto) at ¶ 9.)

Dated: October 29, 2018          Respectfully submitted by,

**VITAL PHARMACEUTICALS, INC.**

/s/ Marc J. Kesten
Marc J. Kesten, Esq.
Attorneys for Defendants,
Vital Pharmaceuticals, Inc. and
John H. Owoc

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

# **TABLE OF CONTENTS**

Page

NOTICE OF MOTION ..................................................................................... i

TABLE OF CONTENTS ................................................................................ iii

TABLE OF AUTHORITIES ............................................................................ iv

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

I.      Preliminary Statement ............................................................................ 1

II.     Factual Background ................................................................................ 2

        A.      The 2008 VPX Lawsuit ................................................................ 2

        B.      Attorney Miles Represented VPX in the 2008 VPX Lawsuit .................. 4

        C.      The 2018 VPX Lawsuit ................................................................ 8

III.    Argument ................................................................................................ 9

        A.      Legal Standards ........................................................................... 9

        B.      Miles Has a Conflict Under the Substantial Relationship Test .............. 13

        C.      The Appearance of Impropriety is Not Only Presumed in This Case,
                It is Inescapable ...................................................................... 16

        D.      The Presumption that Miles Possesses Confidential Information
                Extends Vicariously to SHB, and Disqualifies the Entire Firm ............. 17

        E.      A Stay is Warranted Pending a Resolution of the Disqualification
                Issue ............................................................................................ 19

        F.      Monetary Sanctions are Also Appropriate ................................... 19

IV.     Conclusion .............................................................................................. 21

PROOF OF SERVICE .................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

All American Semiconductor, Inc. v. Hynix Semiconductor, Inc.,
  Case Nos. C 07-1200, C 07-1207, C 07-1212, C 06-2915, 2008
  WL 5484552 (N.D. Cal. Dec. 18, 2008) ........................................13, 15

Analytica, Inc. v. NPD Research, Inc., 708 F.2d 1263 (7th Cir. 1983) ...........20, 21

Andric v. California, 55 F. Supp. 2d 1056 (C.D. Cal. 1999) ............... 10, 11-12, 18

Asyst Technologies, Inc. v. Empak, Inc., 962 F. Supp. 1241 (N.D.
  Cal. 1997) ........................................................................13, 17, 18, 21

Block v. Augme Technologies, Inc., Case No. CV 09-9503-DSF,
  2010 WL 11549566 (C.D. Cal. May 28, 2010)................................11, 13, 15, 19

Cargill Inc. v. Budine, Case No. CV-F-07-349, 2007 WL 1813762
  (E.D. Cal. June 22, 2007) ....................................................12, 16

Flatt v. Super. Ct., 885 P.2d 950 (1994) ................................................. 10

Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH, Case No. C
  08-04909, 2010 WL 1136478 (N.D. Cal. Mar. 20, 2010)............... 13, 14-15, 18

Hagan v. Craigmyle Halters and Tack Mfg., LLC, Case No. EDCV-
  07-0064-ODW, 2008 WL 4392915 (C.D. Cal. Aug. 25, 2008)........................10

Holm v. City of Barstow, Case No. EDCV 08-420-VAP, 2008 WL
  4290857 (C.D. Cal. Sept. 16, 2008) ....................................12, 15, 16, 18

Hull v. Celanese Corp., 513 F.2d 568 (2d Cir. 1975)...........................................16

In re Charlisse C., 194 P.3d 20 (2006) ........................................... 10-11

In re Coordinated Pretrial Proceedings in Petroleum Products
  Antitrust Lit., 685 F.2d 1355 (9th Cir. 1981)........................................12

In re Goetz, 43 B.R. 849 (Bankr. W.D. Wis. 1984) ...........................20, 21

ITC Textile Ltd. v. J.C. Penny Co., Case No. CV 12-2975-DMG,
  2013 WL 12130554 (C.D. Cal. Dec. 6, 2013)........................................ 11, 15-16

1

Page(s)

Jessen v. Hartford Cas. Ins. Co., 111 Cal. App. 4th 698 (Cal. App. Ct.
    2003) ................................................................................................ 13

Largo Concrete, Inc. v. Liberty Mut. Fire Ins. Co., Case No. C 07-
    4651, 2008 WL 53128 (N.D. Cal. Jan. 2, 2008) ............................. 3, 16

Madison 92nd St. Assocs., LLC v. Marriott Int'l Inc., Case No. 13
    Civ. 291, 2013 WL 5913382 (S.D.N.Y. Oct. 31, 2013) ............................. 20, 21

Miranda v. Hokinson, Case No. 2:07-cv-00609-JHN, 2010 WL
    11508620 (C.D. Cal. Feb. 22, 2010) ............................................. 12, 17

People ex rel. Dep't of Corp. v. SpeeDee Oil Change Sys., Inc., 980
    P.2d 371 (1999) .............................................................................. 10

People ex rel. Deukmejian v. Brown, 624 P.2d 1206 (Cal. 1981) ........................ 21

People v. Baylis, 139 Cal. App. 4th 1054 (Cal. Ct. App. 2006) ............................ 11

River West, Inc. v. Nickel, 188 Cal. App. 3d 1297 (Cal. Ct. App.
    1987) .............................................................................................. 13

Star Fabrics, Inc. v. Zappos Retail, Inc., Case No. CV 13-00229, 2013
    WL 12124096 (C.D. Cal. July 19, 2013) ........................................... i

Terrebonne, Ltd. of California v. Murray, 1 F. Supp. 2d 1050 (E.D.
    Cal. 1998) ............................................................................. 19-20, 21

Trone v. Smith, 621 F.2d 994 (9th Cir. 1980) ................................. 10, 11, 12, 14, 18

Western Sugar Coop. v. Archer-Daniels-Midland Co.,
    98 F. Supp. 3d 1074 (C.D. Cal. 2015) ........................... 9-10, 11, 12, 14, 18

**Statutes**

28 U.S.C. § 1927 .............................................................................. 19

Page(s)

**Rules**

ABA Model Code of Prof. Responsibility, Canon 9 ............................................ 12, 16

ABA Model Rules of Prof. Conduct 1.9 ............................................ 12, 17

ABA Model Rules of Prof. Conduct 1.10 ............................................ 17-18

C.D. Cal. L.R. 83-3.1.2 ............................................ 10, 12

C.D. Cal. L.R. 83-3.2.7 ............................................ 20

Cal. Bus. & Prof. Code § 6068 ............................................ 11-12

Cal. RPC 1-100 ............................................ 17-18

Cal. RPC 3-310 ............................................ 10, 16

E.D. Cal. L.R. 83-184 ............................................ 20

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Preliminary Statement

Marc P. Miles, an attorney at SHB and lead counsel for Monster, filed the instant lawsuit alleging that the advertising and marketing of VPX's BANG® energy drinks constitute false advertising, unfair competition, and trade libel (the "2018 VPX Lawsuit"). The claims and allegations in the 2018 VPX Lawsuit mirror a lawsuit that Monster brought against VPX ten years ago for the advertising and marketing of VPX's REDLINE® energy drinks (the "2008 VPX Lawsuit"). **Miles represented VPX in the 2008 VPX Lawsuit.**

Monster's alleged pretext for bringing the two substantially related lawsuits is allowing energy drink products to compete on a level playing field. However, then and now, Monster's claims against VPX are baseless, as evidenced by the dismissal of the 2008 VPX Lawsuit and VPX's forthcoming arguments for dismissal in this suit. Indeed, Monster has resorted to vexatious litigation against VPX as a tactical strategy to harass VPX, cope in vain with Monster's inability to allow Monster's own products to speak for themselves, and attempt to unfairly gain a competitive edge over VPX's rapidly growing brand of BANG® energy drinks.

The present issue is not whether Monster's claims are frivolous, which Defendants will address later in the case, but whether Miles and SHB should be **disqualified** from representing Monster in this action in light of Miles having represented VPX in the 2008 VPX Lawsuit, which involved the **same** parties, **same** subject matter, **same** decision-maker, and **same** claims as here. Miles has effectively "switched sides," representing **VPX** in the former false advertising action, and now representing **Monster** in the present false advertising action. This conduct is clearly impermissible and unethical.

As set forth below, disqualification of Miles and SHB is required under Rule 3-310(E) of the California Rules of Professional Conduct and, separately, under the

Court's inherent authority, guided by Canon 9 of the ABA Model Code and Rule 1.9 of the ABA Model Rules. Miles was in a position to receive material confidential information, and did receive such information, during his representation of VPX in the 2008 VPX Lawsuit, which, again, is substantially related to the issues of false advertising, unfair competition, and trade libel in the present action (the 2018 VPX Lawsuit) involving VPX's energy drink products.

This disqualifying conflict should be imputed to Miles' entire law firm, SHB, under the rules for imputed conflicts within law firms. Further, a stay of the action is warranted, including as to the filing of Defendants' pleading or other response to the Complaint, until new counsel formally appears for Monster. Finally, an award of Defendants' fees and expenses incurred in bringing this motion is appropriate, because, among other things, the disqualification issue should have been obvious to Miles and SHB; Miles and SHB failed to obtain—or even attempt to obtain—VPX's written consent of this clear conflict of interest before Miles switched sides; and Miles' (and SHB's) refusal to bow out gracefully has caused unnecessary and vexatious multiplication of this litigation in bad faith.

## II.  **Factual Background**

### A.  **The 2008 VPX Lawsuit**

1.  Monster has filed other false advertising lawsuits against its perceived competitors in the energy drink market.

2.  For example, before Monster changed its name, Monster sued VPX in California federal court in the referenced 2008 VPX Lawsuit—Hansen Beverage Company v. Vital Pharmaceutical, Inc. [sic], Case No. 08-cv-01545-AJB (S.D. Cal.

1   filed Aug. 21, 2008).[2] A copy of the civil docket and the initial complaint in that action

2   are attached as Exhibits "B" and "C" hereto, respectively.

3       3.      Monster describes the 2008 VPX Lawsuit as a "case involv[ing] a seller of

4   energy drinks who, instead of allowing its products to speak for themselves in the

5   marketplace, resorted to false advertising in order to try to boost its own position and

6   diminish [Monster]'s." (8/21/08 Complaint (Ex. "C" hereto) at 1.)

7       4.      As alleged in that lawsuit, VPX and Monster each market and sell

8   "competing energy drinks," including those associated with VPX's REDLINE® brand

9   and Monster's MONSTER ENERGY® brand. (Id. at ¶¶ 4, 11, 15.)

10      5.      Monster's claims in the 2008 VPX Lawsuit focused on allegedly "false

11  and misleading" statements regarding:

12          a.      the name of VPX's products, which, according to Monster,

13  "untruthful[ly]" states or implies that a "'REDLINE Power Rush! 7-Hour Energy

14  Boost' drink produces a sustained level of 'energy'" (id. at ¶ 18);

15          b.      the qualities of VPX's products, including claims of "7 Hours of

16  Pure Energy," "No Crash," and "7 Hours of Sustained Energy" (id. at ¶¶ 20, 22); and

17          c.      the health promoting benefits of taking VPX's products, such as

18  being "amped to the max in minutes," and "focused and energized throughout the day"

19

20  ------------------------------------

    [2] Monster "states that it is an indirect wholly-owned subsidiary of Monster Beverage

21  Corporation, a publicly held corporation." (9/4/18 Disclosure Statement [Dkt. # 5].)
    Further, Monster changed its name from Hansen Natural Corporation ("Hansen") to

22  Monster in 2012. See Monster Beverage Corporation, Annual Report (Form 10-K)
    (Mar.       1,       2018)       at       5,       available       at

23  https://www.sec.gov/Archives/edgar/data/865752/000110465918014057/a18-
    1123_110k.htm#ITEM1_BUSINESS_013618 (last visited Oct. 29, 2018). This name

24  change is immaterial for present purposes, as Hansen is Monster's predecessor in
    interest and both cases involve, among other similarities, Monster's same brand of

25  energy drink products. See Largo Concrete, Inc. v. Liberty Mut. Fire Ins. Co., Case

26  No. C 07-4651, 2008 WL 53128, at *3 (N.D. Cal. Jan. 2, 2008) (finding a litigant's
    "different names" to be "a distinction without a difference in th[is] context").

27

28

(id. at ¶¶ 23-24), and having increased "reaction time," enhanced "focus and energy," and increased "mood and mental focus" (id. at ¶¶ 26, 28-29).

6.     Monster alleged concern in the 2008 VPX Lawsuit on behalf of the "reasonable consumer audience" for all energy drink products: i.e., that VPX's statements about "[VPX's] own products . . . [might] influence the purchasing decisions of a substantial number of reasonable consumers and actually deceive or have the tendency to deceive a substantial segment of the reasonable consumer audience." (Id. at ¶ 30.)

7.     The 2008 VPX Lawsuit asserts causes of action for: false advertising under Section 43(a) of the Lanham Act; unfair competition under Section 17200 of the California Business and Professions Code; false advertising under Section 17500 of the California Business and Professions Code; and trade libel. (See id. at 6-7, 11 (describing the causes of action as, "False advertising in violation of Lanham Act, Business & Professions Code Sections 17200 and 17500 and Trade Libel").)

8.     On December 30, 2008, the court entered an Order denying Monster's motion for a preliminary injunction. (See Civil Docket Printout (Ex. "B" hereto) at Dkt. # 33.)

9.     Monster filed a First Amended Complaint on April 17, 2009, asserting the same causes of action as noted above. (See 4/17/09 First Amended Complaint (attached as Exhibit "D" hereto) at 7-9.)

10.     The 2008 VPX Lawsuit was dismissed on November 14, 2011. (See Civil Docket Printout at Dkt. # 217.)

**B.     Attorney Miles Represented VPX in the 2008 VPX Lawsuit**

11.     Monster filed the 2008 VPX Lawsuit on August 21, 2008. (Id. at Dkt. # 1.)

12.     On or about September 4, 2008, VPX contacted **Marc P. Miles** to represent VPX in the 2008 VPX Lawsuit. (See Declaration of John H. Owoc ("Owoc

Decl.") (attached as Exhibit "E" hereto) at ¶ 9; Declaration of Erica W. Stump, Esq. ("Stump Decl.") (attached as Exhibit "F" hereto) at ¶ 8.)[3]

13.   Miles and VPX entered into an attorney-client relationship the same day, as memorialized by a written engagement letter subsequently executed between VPX and Callahan & Blaine, the law firm where Miles was associated as a partner at the time. (Stump Decl. at ¶¶ 10-12; Owoc Decl. at ¶ 10.)

14.   On September 8, 2008, Monster filed a motion for a preliminary injunction. (Civil Docket Printout (Ex. "B" hereto) at Dkt. # 6.)

15.   Days later, on September 11, 2008, Miles, **as lead counsel for VPX**, filed and signed a joint motion for an extension of time for VPX to file an answer or other responsive pleading. (Id. at Dkt. # 10.)

16.   VPX and Miles had numerous attorney-client privileged telephone conferences, and exchanged numerous emails, regarding VPX's defense of the 2008 VPX Lawsuit, VPX's defense of the preliminary injunction, and other case-related issues. (Stump Decl. at ¶ 15-18; Owoc Decl. at ¶ 11.)

17.   VPX and Miles also discussed attorney-client privileged information regarding Owoc and his litigation strategies. (See Owoc Decl. at ¶ 11; Stump Decl. at ¶ 19.)

18.   Owoc founded VPX over 20 years ago and is (and always has been) the sole owner, shareholder, and CEO of VPX. (Owoc Decl. at ¶ 1; Stump Decl. at ¶ 19.)

19.   Notably, Owoc is very involved in all of VPX's litigation matters, was actively involved in the 2008 VPX Lawsuit, was a key decision-maker in that lawsuit, and is a key decision-maker in this lawsuit. (Owoc Decl. at ¶ 5; Stump Decl. at ¶ 19.)

---

[3] Erica W. Stump ("Stump") was VPX's in-house General Counsel at the time of the 2008 VPX Lawsuit. Stump has represented and continues to represent VPX since her departure as General Counsel. (See Stump Decl. at ¶ 4.)

20.     Among other material confidential information regarding Owoc and VPX, Miles was made aware of Owoc's litigation strategies and philosophies, including as to settlement, and other personal information material to Owoc's participation in case-related proceedings, including depositions, that are generally applicable to VPX's defense of false advertising and unfair competition actions. (Owoc Decl. at ¶ 11; Stump Decl. at ¶¶ 19, 21.)

21.     VPX also disclosed to Miles other confidential information about VPX that is not publicly available, given that VPX is a privately-held company owned solely by Owoc, which information remains generally applicable to VPX's evaluation, settlement, or litigation of false advertising and unfair competition claims brought against the company. (Owoc Decl. at ¶ 11; Stump Decl. at ¶ 20.)

22.     For example, Miles was made aware of VPX's confidential policies, practices, and procedures for VPX's energy drink products that were in effect in 2008 and are still in effect now, including the advertising and marketing of these products, the testing and clinical research done on the products, and the substantiation of claims for the products. (Owoc Decl. at ¶ 11; Stump Decl. at ¶ 20.)

23.     Additionally, Miles was made aware of VPX's confidential corporate structure, including VPX's legal department, and of this department's legal strategies and philosophies, including how it defends and staffs litigation matters comparable to the size and complexity of the 2008 VPX Lawsuit. (Owoc Decl. at ¶ 11; Stump Decl. at ¶ 21.)

24.     Further, Miles was made aware of VPX's utilization of experts, both in-house and externally, again, for comparable litigation matters involving the types of issues and claims in the 2008 VPX Lawsuit. (Owoc Decl. at ¶ 11; Stump Decl. at ¶ 21.)

25.     On September 24, 2008, VPX informed Miles that VPX's insurance company became involved in the defense of the 2008 VPX Lawsuit and that Miles would be replaced by a new attorney. (Owoc Decl. at ¶ 15; Stump Decl. at ¶ 22.)

26.     VPX paid to Callahan & Blaine the amount of $14,003.14 for the firm's (including Miles') professional services in the 2008 VPX Lawsuit, which payment was cashed and accepted. (Owoc Decl. at ¶¶ 12-14.)

27.     In short, Miles was designated as lead attorney for VPX at a critical juncture of the litigation; submitted numerous filings under his name on behalf of VPX; was compensated by VPX for his representation; received VPX's material, attorney-client privileged and proprietary information in a substantially related lawsuit; and was exposed to VPX and Owoc's confidential policies, practices, and procedures generally applicable to the evaluation, settlement, or litigation of false advertising and unfair competition claims brought against the company that continue in existence unchanged between 2008 and today. (Owoc Decl. at ¶ 22; Stump Decl. at ¶ 23.)

28.     Via an Order dated September 29, 2008, the court granted Miles' motion for substitution of counsel. (Civil Docket Printout (Ex. "B" hereto) at Dkt. # 6.)

29.     Miles joined SHB on or around July 1, 2016. (SHB Press Release, "Shook Orange County Welcomes Two Litigators From Callahan & Blaine" (July 19, 2016), available at   https://www.shb.com/news/2016/07/oc-welcomes-two-litigators-from-callahan-blaine (last visited Oct. 29, 2018).)

30.     However, Miles did not inform VPX of his new position with SHB, much less obtain VPX's written consent to represent Monster in the present action. (Owoc Decl. at ¶¶ 20-21.)

31.     To be clear, neither VPX nor Owoc consent to Miles' representation of Monster in this action. (Owoc Decl. at ¶ 21.)

## C.    The 2018 VPX Lawsuit

32.    Monster filed this action (the 2018 VPX Lawsuit) on September 4, 2018, against VPX and Owoc, as an individual. (9/4/18 Complaint [Dkt. # 1] at ¶¶ 15-16.)[4]

33.    Monster alleges, as it did in the 2008 VPX Lawsuit, that VPX and itself are competitors in the energy drink market and have been competing against each other in this space since 2002 when Monster launched its MONSTER ENERGY® brand of energy drinks. (Id. at ¶¶ 21, 22, 24.)

34.    The crux of Monster's allegations in the instant lawsuit are essentially repeated from the 2008 VPX Lawsuit, i.e., that VPX and Owoc are allegedly "[u]nable to keep pace with Monster in the marketplace and compete on a level playing field, [and] have waged a nationwide advertising and marketing campaign that falsely promotes the health benefits and quality of BANG." (9/4/18 Complaint [Dkt. # 1] at ¶ 26.)

35.    BANG® is one of VPX's energy drink products. It is undisputed that VPX manufactures and sells the energy drinks at issue in the 2008 VPX Lawsuit and the present action. (Owoc Decl. at ¶ 7).

36.    According to Monster, VPX's advertising that its BANG® energy products are brought "by the makers of the legendary REDLINE® ENERGY PRODUCTS," is an example of the "misrepresentations and/or omissions" at issue. (9/4/18 Complaint [Dkt. # 1] at ¶ 29.)

37.    Monster also challenges VPX's advertisement of, among other things, the ingredients or lack thereof (such as sugar) in VPX's products; the relative qualities of

---

[4] While Monster did not sue Mr. Owoc individually in the 2008 VPX Lawsuit, it has done so here in a desperate attempt to up the ante and further harass VPX. Regardless of Monster's gamesmanship, the inclusion of this individual defendant—who at all relevant times, again, was sole owner, shareholder, and CEO of VPX and was actively involved in the company's litigation matters, including as a key decision-maker (Owoc Decl. at ¶¶ 1, 5)—does not alter the disqualification analysis at all.

VPX's products (which, for example, cause "no crash" while "High sugar drinks" do); and the health "promoting" benefits of VPX's products. (See, e.g., id. at ¶¶ 31-34, 37.)

38.    In short, Monster alleges in the 2018 VPX Lawsuit that, "by falsely highlighting the presence of certain ingredients, underscoring their positive qualities, [and] providing detailed [but allegedly incomplete] descriptions of the health benefits and cures of the ingredients . . ., Defendants have misled, and continue to mislead, consumers." (Id. at ¶ 64.)

39.    Monster asserts in this 2018 action the exact same legal claims as it asserted in the 2008 action: i.e., (1) false advertising under Section 43(a) of the Lanham Act; (2) unfair competition under Section 17200 of the California Business and Professions Code; (3) false advertising under Section 17500 of the California Business and Professions Code; and (4) trade libel. (Id. at 24-28.)

40.    Significantly, Monster is represented in the instant action by **Marc P. Miles**, who signed the Complaint and is designated as Monster's lead counsel. (9/4/18 Complaint [Dkt. # 1] at 31.) Miles also has made extrajudicial statements about the present action in bad faith that have been publicly disseminated and are the subject of a pending complaint with the State Bar of California. (Owoc Decl. at ¶ 19.)[5]

41.    Again, the very same attorney—**Marc P. Miles**—was also the lead counsel representing VPX in the 2008 VPX Lawsuit at the inception of that litigation.

## III.    Argument

### A.    Legal Standards

A motion to disqualify counsel is the proper method for a party to raise the issues of a conflict of interest or breaches of professional ethical duties. Such motions in the Central District are governed by state law. Western Sugar Coop. v. Archer-Daniels-Midland Co., 98 F. Supp. 3d 1074, 1080 (C.D. Cal. 2015) (citation omitted) (Marshall,

---

[5] A representative article containing such extrajudicial statements, among others, is attached as Exhibit "1" to the Owoc Declaration. (Owoc Decl. at ¶ 19.)

J.). Specifically, this District applies the California State Bar Act, the California Rules of Professional Conduct, the related judicial decisions in assessing the standard of professional conduct, and, as further guidance, the Model Rules of Professional Conduct of the American Bar Association ("ABA"). <u>Id.</u> (citing C.D. Cal. L.R. 83-3.1.2). A trial court also possesses the inherent authority to disqualify an attorney, which authority "'derives from the power inherent in every court to control[,] in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it.'" <u>Hagan v. Craigmyle Halters and Tack Mfg., LLC</u>, Case No. EDCV-07-0064-ODW, 2008 WL 4392915, at *1 (C.D. Cal. Aug. 25, 2008) (quoting <u>People ex rel. Dep't of Corp. v. SpeeDee Oil Change Sys., Inc.</u>, 980 P.2d 371 (1999)) (internal alternation marks omitted). <u>See also</u> <u>Andric v. California</u>, 55 F. Supp. 2d 1056, 1062 (C.D. Cal. 1999) (Matz, J.) (noting that "[t]he district court has primary responsibility for overseeing the conduct of the attorneys who appear before it") (citing <u>Trone v. Smith</u>, 621 F.2d 994, 999 (9th Cir. 1980)).

The instant motion for disqualification arises from an attorney's successive representation of clients with adverse interests. In this context, Rule 3-310(E) of the California Rules of Professional Conduct ("Cal. RPC") "prevents an attorney from representing a client with interests that are adverse to a former client from whom the attorney has obtained confidential information unless the attorney obtains the [informed] written consent of the former client." <u>Hagan</u>, 2008 WL 4392915, at *1 (citing Cal. RPC 3-310(E)). The applicable legal standards "focus on an attorney's duty of confidentiality." <u>Western Sugar</u>, 98 F. Supp. 3d at 1080. "If an attorney undertakes to represent a client adverse to a former client without obtaining informed consent, the former client may disqualify the attorney by showing a 'substantial relationship' between the subjects of the prior and current representations." <u>Id.</u> at 1080-81 (citing <u>Flatt v. Super. Ct.</u>, 885 P.2d 950 (1994)), and <u>In re Charlisse C.</u>, 194 P.3d 20 (2006)).

Notably, "'[p]rofessional ethics demand that an attorney avoid conflicts of interest in which duties owed to different clients are in opposition.'" <u>Block v. Augme Technologies, Inc.</u>, Case No. CV 09-9503-DSF, 2010 WL 11549566, at *4 (C.D. Cal. May 28, 2010) (quoting <u>People v. Baylis</u>, 139 Cal. App. 4th 1054, 1064 (Cal. Ct. App. 2006)).

This Court, citing the Ninth Circuit Court of Appeals in <u>Trone</u>, has articulated the relevant test as follows:

> The relevant test for disqualification is whether the former representation is "substantially related" to the current representation. The interest to be preserved by preventing attorneys from accepting representation adverse to a former client is the protection and enhancement of the professional relationship in all its dimensions. It is necessary to preserve the value attached to the relationship both by the attorney and by the client. These objectives require a rule that prevents attorneys from accepting representation adverse to a former client if the later case bears a substantial connection to the earlier one. Substantiality is present if the factual contexts of the two representations are similar or related.
>
> Perhaps the most important facet of the professional relationship served by this rule of disqualification is the preservation of secrets and confidences communicated to the lawyer by the client. If there is a reasonable probability that confidences were disclosed which could be used against the client in later, adverse representation, a substantial relation between the two cases is presumed.

<u>ITC Textile Ltd. v. J.C. Penny Co.</u>, Case No. CV 12-2975-DMG, 2013 WL 12130554, at *1 (C.D. Cal. Dec. 6, 2013) (Gee, J.) (quoting <u>Trone</u>, 621 F. 2d at 998). <u>See also</u> <u>Western Sugar</u>, 98 F. Supp. 3d at 1080 (noting that disqualification based on a showing of a substantial relationship "protects the enduring duty to preserve client confidences that survives the termination of the attorney's representation") (citation omitted); <u>Andric</u>, 55 F. Supp. 2d at 1062 (citing additional applicable rules and principles, including California Business and Professions Code § 6068(e), which requires an

attorney to "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client").

Alternatively, under the Court's inherent authority to guard against the inadvertent use of confidential information, this Court may look to Canon 9 of the ABA Model Code of Professional Responsibility (the "Model Code") and Rule 1.9 of the ABA Model Rules of Professional Conduct (the "Model Rules") as separate grounds for disqualification.[6] Canon 9 holds that "a lawyer should avoid **even the appearance** of professional impropriety" (emphasis added). "[T]he Ninth Circuit has held that the violation of Canon 9 is an independent basis for disqualification." Holm v. City of Barstow, Case No. EDCV 08-420-VAP, 2008 WL 4290857, at *7 (C.D. Cal. Sept. 16, 2008) (Phillips, J.) (citing In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Lit., 685 F.2d 1355, 1360 (9th Cir. 1981), cert. denied, 455 U.S. 990 (1982)). See also Cargill Inc. v. Budine, Case No. CV-F-07-349, 2007 WL 1813762, at *10-11 (E.D. Cal. June 22, 2007) (same); Trone, 621 F.2d at 999 (noting that the substantial relationship test "is necessary to implement" Canon 9, among other canons of professional ethics). Rule 1.9 of the Model Rules provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." "Although the Model Rules are not binding in this District (Local Rule 83-3.1.2), Rule 1.9 is pertinent and instructive." Miranda v. Hokinson, Case No. 2:07-cv-00609-JHN, 2010 WL 11508620, at *4 (C.D. Cal. Feb. 22, 2010) (Nguyen, J.).

---

[6] The Model Code is the predecessor of the Model Rules, which, again, may be considered as "guidance" in resolving questions of professional conduct. C.D. Cal. L.R. 83-3.1.2.

### B.    Miles Has a Conflict Under the Substantial Relationship Test

"When a substantial relationship between the representations is established, the attorney is **automatically disqualified** from representing the second client." See Western Sugar, 98 F. Supp. 3d at 1081 (citation omitted) (emphasis added). See also Asyst Technologies, Inc. v. Empak, Inc., 962 F. Supp. 1241, 1242 (N.D. Cal. 1997) ("Once a substantial relationship is found, an irrebuttable presumption arises that the former attorney had confidential information material to the current representation and 'the inquiry ends.'") (citing River West, Inc. v. Nickel, 188 Cal. App. 3d 1297, 1304 (Cal. Ct. App. 1987)); Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH, Case No. C 08-04909, 2010 WL 1136478, at *5 (N.D. Cal. Mar. 20, 2010) (noting that the conclusive presumption is "justified as a rule of necessity") (citation omitted).

The relevant inquiry is "whether there was a direct relationship with the former client and whether the relationship touched on issues related to the present litigation." Western Sugar, 98 F. Supp. 3d at 1081 (citation omitted). See also Block, 2010 WL 11549566, at *4 ("[A] substantial relationship exists where it appears that an attorney would have obtained from the former client confidential information that is relevant to the current representation.") (citation omitted); All American Semiconductor, Inc. v. Hynix Semiconductor, Inc., Case Nos. C 07-1200, C 07-1207, C 07-1212, C 06-2915, 2008 WL 5484552, at *5 (N.D. Cal. Dec. 18, 2008) ("Successive representations are substantially related where the facts support a 'rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues.'") (quoting Jessen v. Hartford Cas. Ins. Co., 111 Cal. App. 4th 698, 713 (Cal. App. Ct. 2003)). "A 'substantial relationship' does not necessarily mean an exact match between the facts and issues involved in the two representations." Western Sugar, 98 F. Supp. 3d at 1087(citation omitted).

Here, there was a direct relationship between Miles and VPX in the 2008 VPX Lawsuit, which involved the **same parties** (VPX and Monster), **same subject matter** (the advertising and marketing of VPX's energy drinks), **same decision-maker** (John H. Owoc), and **same claims** (for false advertising under Section 43(a) of the Lanham Act and related state law causes of action) as here. This relationship clearly touched on material factual and legal issues related to the present litigation, including VPX's advertising and marketing of its products, testing and clinical research done on the products, substantiation of claims for its products, and corporate structure and policies, as well as related to Owoc, both personally and in his corporate capacity. Miles' former representation of VPX as its lead attorney in the 2008 VPX Lawsuit in fact goes to the heart of material issues relevant in the evaluation, prosecution, settlement, or accomplishment of this lawsuit given its factual and legal issues.

Thus, based on the similarities between the two factual situations, the similarities between the legal questions involved, and the nature and extent of Miles' involvement with the cases, Miles is conclusively presumed to possess confidential information and should be disqualified from this action. See, e.g., Trone, 621 F.2d at 999-1000 (applying presumption where prior legal work involved a "proposed 1972 stock offering only, lasted but one month, and . . . the complaint in the [subsequent] case contain[ed] no allegation concerning that offering as a basis for liability" for bank fraud and related claims filed years later, and where "the subject matters of the professional representation undertaken in each case were . . . interlinked by reason of common factual background"); Western Sugar, 98 F. Supp. 3d at 1087 (finding prior legal work relating to the propriety of characterizing high-fructose corn syrup ("HFCS") as "natural" to be substantially related for disqualification purposes to a subsequent action for false advertising of HFCS); Genentech, 2010 WL 1136478, at *7-8 (applying presumption "[i]n light of [attorney]'s designation as lead attorney" in a former matter, "many filings under his signature," and "direct and personal representation of [the

former client] in the former matter") (finding substantial relation upon "share[d] material subject matter" and common material facts in earlier and subsequent representation involving patent litigation, and where "[t]he earlier representation [wa]s also related to the [former client's] defense" in the subsequent representation); Block, 2010 WL 11549566, at *5 (applying presumption  where "the type of work [the conflicted attorney in that case] was engaged to perform necessarily g[ave] rise to a presumption that [this attorney] had access to confidential information," even if the attorney was merely of counsel to, and not a member of, the disqualified firm, and if the attorney was not, directly or indirectly, involved in the firm's current representation in contract litigation involving stock purchase warrants); Holm, 2008 WL 4290857, at *5-6 (applying presumption where certain facts in both cases "ar[o]se out of a police officer's alleged exercise of his First Amendment right to free speech," and "from alleged wrongful discipline and retaliation imposed as a result of the officer's exercise of his free speech rights," and, "most critically," where both cases "involve[d] the same law enforcement agency," and where the legal claims in both cases were "nearly identical, and both assert[ed] the alleged wrongdoer is the same entity"); Largo Concrete, 2008 WL 53128, at *3 (applying presumption where both lawsuits in that case "accus[ed] [the same party] of mismanaging its workers compensation claims handling process" and where the conflicted attorney's (an associate') billing invoices rationally reflected that the attorney "[wa]s possibly exposed to strategy or policy along with confidential information when reviewing documents for privilege" and "claims files"); All American Semiconductor, 2008 WL 5484552, at *7 (applying presumption where the conflicted attorney "was privy to [the former client]'s confidential information as a participant in the [joint defense agreement]" in prior matters involving a price-fixing conspiracy carried out by numerous defendants).

Further, disqualification is required regardless of the amount of time that Miles was counsel of record in the 2008 VPX Lawsuit. See, e.g., ITC Textile, 2013 WL

12130554, at *2 (requiring disqualification even where the law firm in that case was never formally retained, a retainer/engagement letter was never formally executed, and the fiduciary relationship existing between the lawyer and client in that case was "brief" and "limited" in time, arising from a single initial consultation regarding substantially related copyright issues).[7]

## C.     The Appearance of Impropriety is Not Only Presumed in This Case, It is Inescapable

"'Where it can be reasonably said that in the course of the former representation the attorney **might** have acquired information related to the subject matter of his subsequent representation, it is the court's duty to order the attorney disqualified.'" Cargill, 2007 WL 1813762, at *12 (quoting Hull v. Celanese Corp., 513 F.2d 568, 572 (2d Cir. 1975)) (emphasis added). Moreover, "'[t]he breach of confidence would not have to be proved; it is presumed in order to preserve the spirit of [Canon 9].'" Id. (same).

In the present case, Miles actually acquired attorney-client and proprietary information during his representation of VPX in the 2008 VPX Lawsuit that is related to the subject matter of his representation in the 2018 VPX Lawsuit. (See Owoc Decl. at ¶ 11; Stump Decl. at ¶¶ 15-21.) At a minimum, under Canon 9 of the Model Code, it is beyond dispute that Miles "might" have acquired information related to the two lawsuits, such that "'it is this court's duty to order the attorney disqualified.'" Cargill, 2007 WL 1813762, at *12-14 (disqualifying an attorney under Canon 9; collecting other such cases). See also Holm, 2008 WL 4290857, at *7 (finding "a strong and clear

---

[7] Miles also is conflicted, under Rule 3-310(E), because, as noted above, he in fact received confidential information during the 2008 VPX Lawsuit. Miles has the burden of showing otherwise. Largo Concrete, 2008 WL 53128, at *4 (citation omitted). Regardless, this Court need not resolve the issue of Miles' actual receipt of confidential information given the substantial relationship between the two representations at issue. See, e.g., Holm, 2008 WL 4290857, at *4 and *6 n.4.

'appearance of professional impropriety'" under Canon 9 where an attorney "represented [a former client] five years ago and now has turned around and sued him on a substantially related matter"). Likewise, under Rule 1.9 of the Model Rules, disqualification is appropriate because of Miles' failure to obtain VPX's informed written consent to his representation of Monster in this action. See Miranda, 2010 WL 11508620, at *4 (finding this to be a "clear violation of the Model Rules" and an independent ground for disqualification).

### D. The Presumption that Miles Possesses Confidential Information Extends Vicariously to SHB, and Disqualifies the Entire Firm

"The presumption that an attorney has access to confidential information relevant to the subsequent representation and resulting disqualification extends vicariously to the entire firm." See Western Sugar, 98 F. Supp. 3d at 1081 (citation omitted). Again, as noted above, the relevant test is not whether the attorneys at a firm actually possessed or conveyed confidential information. Id. at 1088. See also Asyst, 962 F. Supp. at 1242 ("A client who objects to its former counsel acting adversely to it need not prove actual misuse of confidential information. Requiring such proof would by itself require the disclosure of confidential information.") (citation omitted). Rather, where a movant shows that a substantial relationship exists between the two representations, the entire firm is "conclusively presumed" to possess confidential information material to the present action. See Western Sugar, 98 F. Supp. 3d at 1081 (citation omitted); Asyst, 962 F. Supp. at 1242 ("If the attorney is currently a member of a law firm, her knowledge is imputed to all members of the firm and the entire firm is disqualified.") (citation omitted).

This conclusive, irrebuttable presumption "ensures that clients are not forced to reveal the confidences the rule [of confidentiality] is intended to protect." Western Sugar, 98 F. Supp. 3d at 1088-89 (citation omitted). This also is consistent with the intent of California's Rules of Professional Conduct, which are intended "to protect the

public and to promote respect and confidence in the legal profession. . .. The prohibition of certain conduct in these rules is not exclusive." Cal. RPC 1-100(A). Further, this is consistent with the rule that "multistate firms with branch offices are, and are considered, a single firm" for "all" purposes, including disqualification. See Andric, 55 F. Supp. 2d at 1059 (citing Comment [2] to Rule 1.10 of the ABA Model Rules of Professional Conduct). See also Genentech, 2010 WL 1136478, at *7 ("This rule applies even when the conflicted attorney provided the former representation as a member of another firm.") (citation omitted). At bottom, as the Ninth Circuit reaffirmed in Trone, "institutional standards of the legal profession impose upon the attorneys a continuing obligation to the client not to change sides after the representation has ceased. This obligation is what distinguishes a professional relationship from one involving merely a barter and sale." 621 F.2d at 1000.

Here, the entire firm of SHB should be disqualified to ensure that VPX is not forced to reveal the confidences the rule of confidentiality is intended to protect. See, e.g., Western Sugar, 98 F. Supp. 3d at 1089-90 (disqualifying entire firm irrespective of formal ethical walls; noting that proposed alternatives to disqualification do not cure a breach of ethical duties); Asyst, 962 F. Supp. at 1242-44 (disqualifying entire large law firm from defending a client against a patent infringement claim where two of the firm's partners had represented the plaintiff in that case in prosecuting the patents 14 years previously) (rejecting the firm's arguments that those lawyers' knowledge should not be imputed to the firm, because they had acquired the knowledge while they were at a different firm, they had not discussed the case with other lawyers at the firm opposing disqualification, and the firm had circulated an internal memorandum instructing its other lawyers not to discuss matters with them); Holm, 2008 WL 4290857, at *6 (disqualifying an entire firm even where the conflicted attorney in that case did not join the firm "until after the departure of the attorneys who had previously represented [the former client]").

### E.     A Stay is Warranted Pending a Resolution of the Disqualification Issue

Upon the grant of disqualification in this case, Monster, which is a Delaware corporation (Complaint [Dkt. # 1] at ¶ 14), will be without an attorney of record. "A corporation . . . may not appear pro se and must obtain new counsel." Block, 2010 WL 11549566, at *6 (citation omitted) (requiring the corporate-litigant in that case, upon the disqualification of its conflicted counsel, to obtain new counsel within 30 days or be subject to sanctions, including the striking of its pleading and other appearances). Accordingly, Defendants respectfully request a stay of this action, including as the filing of a response under Federal Rule of Civil Procedure 7 or a motion to dismiss under Federal Rule of Civil Procedure 12, pending a resolution of the disqualification issue and, if disqualification is granted, through the deadline established for the appearance of new counsel.

### F.     Monetary Sanctions are Also Appropriate

"Monetary sanctions are appropriate to reimburse [a party] for the attorneys fees incurred in litigating the ethical issues requiring disqualification, under 28 U.S.C. § 1927 and . . . Local Rule[s] []; and alternatively, the court's inherent power." See Terrebonne, Ltd. of California v. Murray, 1 F. Supp. 2d 1050, 1074 (E.D. Cal. 1998) (awarding the movant's "reasonable attorney fees and costs incurred in prosecuting the disqualification motion because the conduct of the disqualified attorneys caused unnecessary and vexatious multiplication of this litigation and has needlessly delayed

its resolution").[8] Additionally, "[t]he fact that [SHB] is a law firm makes its stubbornness in resisting disqualification less forgivable than if it were a lay client." See Analytica, Inc. v. NPD Research, Inc., 708 F.2d 1263, 1269-70 (7th Cir. 1983) (affirming award of movant's fees and expenses where the "[conflicted firm]'s insistence on litigating the question rather than bowing out gracefully was so unreasonable that the district judge could properly find it to be in bad faith"). See also Madison 92nd St. Assocs., LLC v. Marriott Int'l Inc., Case No. 13 Civ. 291, 2013 WL 5913382, at *12-15 (S.D.N.Y. Oct. 31, 2013) (sanctioning a law firm for disregarding a clear conflict of interest where the firm "would not agree to withdraw until it was faced with the fact that [the movant] was about to file a motion to disqualify on the public record"); In re Goetz, 43 B.R. 849, 853 (Bankr. W.D. Wis. 1984) (sanctioning law firm where it was "clear" that the subject of the two representations was substantially related).

Likewise, the conflict in this case is clear. Miles' (and SHB's) refusal to "bow[] out gracefully" has caused unnecessary and vexatious multiplication of this litigation in bad faith, and has needlessly delayed its resolution. For example, among other indicia of bad faith, Miles not only failed to even attempt to obtain VPX's written consent of an obvious conflict before switching sides, but, willfully refused to withdraw after VPX raised the disqualification issue itself during the prefiling conference of counsel. Miles also has made extrajudicial statements about the present action that are the subject of a pending complaint with the State Bar of California.

---

[8] The Local Rules of the Eastern District at issue in Terrebonne are substantively similar to the Local Rules of this District. Compare Terrebonne, 1 F. Supp. 2d at 1054 (citing Eastern District L.R. 83-184, allowing any judge to "take any [] appropriate disciplinary action against [an] attorney" who "engages in conduct which may warrant discipline or other sanctions") with Central District L.R. 83-3.2.7 (reaffirming the "inherent power" of "any judge of this Court . . . to maintain control over the proceedings conducted before said judge," including for attorney misconduct under Rule 83-3).

---

(Owoc Decl. at ¶ 19.) The record thus supports a finding that Defendants should be awarded their fees and expenses incurred in bringing this motion. See Terrebonne, 1 F. Supp. 2d at 1074; Analytica, 708 F.2d at 1269-70; Madison 92nd St., 2013 WL 5913382, at *12-15; In re Goetz, 43 B.R. at 853.

## IV.  Conclusion

A client's right to be represented by counsel of its own choosing should not trump counsel's continuing duty to maintain the confidences of a former client. Simply put, as the California Supreme Court has stated,

> an attorney is forbidden to do either of two things after severing his relationship with a former client. He may not do anything which will injuriously affect his former client in any manner in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship.

People ex rel. Deukmejian v. Brown, 624 P.2d 1206, 1208 (Cal. 1981) (citation omitted). Thus, "[b]ecause of the fiduciary nature of the attorney-client relationship, courts have been loathe to permit an attorney to act adversely to the interests of a former client." See Asyst, 962 F. Supp. at 1242 (citation omitted).

**WHEREFORE,** Defendants pray for an Order disqualifying Marc P. Miles and Shook, Hardy & Bacon L.L.P. from their continued representation of Plaintiff in this action; staying the action, including as to the filing of Defendants' pleading or other response to the Complaint until new counsel formally appears for Plaintiff; awarding

Defendants their fees and expenses incurred in bringing this motion; and awarding any further and appropriate relief. A proposed Order has been filed concurrently herewith.[9]

Dated: October 29, 2018        Respectfully submitted by,

**VITAL PHARMACEUTICALS, INC.**

/s/ Marc J. Kesten
Marc J. Kesten, Esq.
Attorneys for Defendants,
Vital Pharmaceuticals, Inc. and
John H. Owoc

---

[9] VPX has submitted the separate declarations of John H. Owoc, Marc J. Kesten, and Erica W. Stump in support of this motion. These declarations, including, in particular, of Owoc and Stump, reference documents containing information that is both protected by the attorney-client privilege and proprietary. These documents, including VPX's engagement letter with Miles, and emails between VPX and Miles, have not been filed with the Court to preserve the privileges and confidentiality attendant to the documents. VPX believes that this motion, and the averments in the declarations submitted herewith, are more than sufficient to establish mandatory disqualification here. Nevertheless, pursuant to Federal Rule of Evidence 502(d), VPX is willing to provide the Court with copies of the documents referenced in the declarations for the Court to review in camera if the Court determines that the records would assist it in deciding the instant motion. (Kesten Decl. (Ex. "A" hereto) at ¶ 9.)

# PROOF OF SERVICE

I am over the age of 18 years, am not a party to this action, and am employed in Broward County, Florida. My business address is 1600 North Park Drive, Weston, FL 33326.

On **October 29, 2018**, I caused the foregoing document, **Defendants Vital Pharmaceuticals, Inc. and John H. Owoc's Notice of Motion and Motion (1) to Disqualify Counsel, (2) for Stay Pending Resolution of Disqualification Issue, and (3) for Monetary Sanctions**, to be electronically filed in .pdf format with the Clerk of the United States District Court for the Central District of California using the CM/ECF System.

In accordance with the electronic filing procedures of this Court, service has been effected on the following parties and counsel of record who have consented to receive service through the CM/ECF System and will receive notification of the foregoing filing via an email generated by the CM/ECF System:

> **Marc P. Miles** <mmiles@shb.com>
> **Frank C. Rothrock** <frothrock@shb.com>
> **Naoki S. Kaneko** <nkaneko@shb.com>
> Shook, Hardy & Bacon L.L.P.
> 5 Park Plaza, Suite 1600
> Irvine, CA 92614-2546
> Tel.:   (949) 475-1500
> Fax:   (949) 475-0016
> Attorneys for Plaintiff, Monster Energy Company

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 29, 2018, in Weston, Florida.

> /s/ Marc J. Kesten
> Marc J. Kesten, Esq.

/ / /

# EXHIBIT "B"

CLOSED,PROTO,SEALDC

# U.S. District Court
## Southern District of California (San Diego)
## CIVIL DOCKET FOR CASE #: 3:08-cv-01545-AJB-WVG

Hansen Beverage Company v. Vital Pharmaceutical, Inc.
Assigned to: Judge Anthony J. Battaglia
Referred to: Magistrate Judge William V. Gallo
Cause: 15:1125

Date Filed: 08/21/2008
Date Terminated: 11/14/2011
Jury Demand: Plaintiff
Nature of Suit: 840 Trademark
Jurisdiction: Federal Question

## **Plaintiff**

**Hansen Beverage Company**
*a Delaware corporation*

represented by **Edward J. McIntyre**
Solomon, Ward, Seidenwurm & Smith, LLP
401 B Street
Suite 1200
San Diego, CA 92101
(619) 231-0303
Fax: (619) 231-4755
Email: emcintyre@swsslaw.com
*TERMINATED: 12/15/2009*
*LEAD ATTORNEY*

**Jenny L. Dixon**
Soloman Ward Seidenwurm & Smith LLP
401 B Street
Suite 1200
San Diego, CA 92101
(619)231-0303
Fax: (619)615-7925
Email: jdixon@swsslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tanya Marie Schierling**
Solomon Ward Seidenwurm & Smith, LLP
401 B Street
Suite 1200
San Diego, CA 92101
(619) 231-0303
Fax: (619)231-4755
Email: tschierling@swsslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Mahyar Vasseghi**
Roll Law Group P.C.
11444 West Olympic Boulevard
Los Angeles, CA 90064
(310) 966-8776
Email: michael.vasseghi@roll.com

TERMINATED: 12/14/2009

**Thomas F Landers**
Solomon Ward Seidenwurm & Smith, LLP
401 B Street
Suite 1200
San Diego, CA 92101
(619) 231-0303
Fax: (619) 231-4755
Email: tlanders@swsslaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Vital Pharmaceutical, Inc.**          represented by   **Alan J Droste**
*a Florida corporation*                                  King Parret & Droste LLP
*also known as*                                          450 Newport Center Drive
VPX                                                      Suite 500
                                                         Newport Beach, CA 92660
                                                         (949)644-3484
                                                         Fax: (949)644-3993
                                                         Email: adroste@kpdlex.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Audra Mayumi Mori**
                                                         Perkins Coie LLP
                                                         1888 Century Park East
                                                         Suite 1700
                                                         Los Angeles, CA 90067-1721
                                                         (310) 788-3238
                                                         Fax: (310)788-3399
                                                         Email: amori@perkinscoie.com
                                                         *TERMINATED: 09/24/2009*
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Erica Wynne Stump**
                                                         Vital Pharmaceuticals, Inc.
                                                         15751 SW 41st Street
                                                         Suite 300
                                                         Davie, FL 33331-1520
                                                         (954)641-0570
                                                         Fax: (954)641-0583
                                                         Email: ericas@vpxsports.com
                                                         *TERMINATED: 12/11/2009*
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Jennifer N Chiarelli**
                                                         Perkins Coie LLP

1888 Century Park East
Suite 1700
Los Angeles, CA 90067-1721
(310)788-9900
Fax: (310)788-3399
Email: jchiarelli@perkinscoie.com
*TERMINATED: 09/24/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kalina Pagano**
Vital Pharmaceutical, Inc.
1600 North Park Drive
Weston, FL 33326
(954) 641-0570
Fax: (954) 641-6254
Email: kpagano@vpxsports.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine M Dugdale**
Perkins Coie LLP
1888 Century Park East
Suite 1700
Los Angeles, CA 90067-1721
(310)788-9900
Fax: (310)788-3399
Email: kdugdale@perkinscoie.com
*TERMINATED: 09/24/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc P. Miles**
Shook, Hardy & Bacon
5 Park Plaza, Suite 1600
Irvine, CA 92614
9494751500
Fax: 9494750016
Email: mmiles@shb.com
*TERMINATED: 09/29/2008*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ramsey M. Alsalam**
Perkins Coie, LLP
1201 Third Avenue
40th Floor
Seattle, WA 98101
(206)359-6385
Fax: (206) 359-7385
Email: ralsalam@perkinscoie.com
*TERMINATED: 09/24/2009*
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shawn L. Michaelson**
Daniels Kashtan Downs Robertson &
McGirney
3300 Ponce DeLeon Boulevard
Coral Gables, FL 33134
(305) 448-7988
Fax: (305) 448-7988
Email: smichaelson@dkdr.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Luis F. Ugaz**
Vital Pharmaceuticals, Incorporated
Legal Department
1600 North Park Drive
Weston, FL 33326
(954) 641-0570
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Victoria N. Godwin**
Vital Pharmaceuticals, Inc.
1600 North Park Drive
Weston, FL 33326
(954)641-0570
Fax: (954)389-6254
Email: vickeyg@vpxsports.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/21/2008 | 1 | COMPLAINT with Jury Demand against Vital Pharmaceutical, Inc. ( Filing fee $ 350 receipt #154335) filed by Hansen Beverage Company.(jmz)(kaj). (Entered: 08/21/2008) |
| 08/21/2008 | 2 | Summons Issued as to Vital Pharmaceutical, Inc.. (jmz) (Entered: 08/21/2008) |
| 08/21/2008 | 3 | NOTICE OF RELATED CASE(S) by Hansen Beverage Company of case(s) 08cv1166-IEG(POR) (jmz) Modified on 8/22/2008 - Low number order prepared. (mdc) (Entered: 08/21/2008) |
| 08/21/2008 | 4 | NOTICE of Party With Financial Interest by Hansen Beverage Company (jmz) (Entered: 08/21/2008) |
| 08/21/2008 | 5 | REPORT on the filing or determination of an action (jmz) (Entered: 08/27/2008) |
| 09/08/2008 | 6 | MOTION for Preliminary Injunction by Hansen Beverage Company. (Attachments: # 1 Memo of Points and Authorities (Part 1 of 2), # 2 Memo of Points and Authorities (Part 2 of 2), # 3 Declaration of Rodney Sacks, # 4 Declaration of Thomas Davis, Ph.D.) (McIntyre, Edward) (Entered: 09/08/2008) |
| 09/09/2008 | 7 | NOTICE by Hansen Beverage Company re 6 MOTION for Preliminary Injunction *Notice* |

# EXHIBIT "1"

# Monster Energy Sues VPX Over Bang Energy Claims

**Martín Caballero** Sep. 6, 2018 at 6:17 pm

| Tweet |
| --- |
| Share |
| Share |
| Reddit |
| +1 |
| Email |



Can an energy drink treat Alzheimer's disease? It depends on who you ask.

According to Vital Pharmaceuticals, the Florida-based producer of Bang Energy Drink which is marketed as the "world's healthiest energy drink," it can. According to attorneys from Monster Energy, who accused Bang of marketing "modern-day snake oil" , it definitely cannot.

Monster filed a complaint against Vital, which markets Bang under its VPX Sports label, in U.S. District Court for the Central District of California on Tuesday.The complaint

takes aim at specific claims by made by VPX that Bang can treat chronic diseases and even "reverse mental retardation." Besides Alzheimer's, VPX founder and CEO John "Jack" Owoc also claimed consuming Bang can treat Parkinson's disease, Huntington's disease and other forms of dementia, as well as "improve brain function."

VPX ties the products' functionality to the use of branch chain amino acids (BCAAs) and "Super Creatine," a form of water-stable creatine peptides that VPX claims is "much more bioavailable than regular creatine" and can "solve mental retardation as we age," in the words of Owoc. Lawyers for Monster disputed those health claims, as well as the accuracy of research published by VPX that allegedly supported those conclusions.

Owoc is also named as a defendant in the suit. The complaint specifically questions his qualifications, noting that he uses the title of "Chief Scientific Officer" at VPX based exclusively on previous job experience as a high school science teacher.

Monster is claiming that VPX is engaging in false advertising detrimental to the energy drink industry and consumers at large. The complaint notes that copy on Bang's website implies that rival energy drinks are "high sugar, life-sucking soda[s] masquerading as energy drink[s].".

"I am amazed at the lengths some companies will go to make a buck," said Marc P. Miles of Shook, Hardy & Bacon, counsel for Monster, in a statement. "I imagine this lawsuit is just the tip of the iceberg for Bang. I would not be surprised if the (U.S. Food and Drug Administration) took action or if there are consumer class action lawsuits for false advertising. What is interesting to me is whether retailers will become liable now that they are aware of the alleged issues with Bang's ingredients."

Vital Pharmaceuticals, founded in 1993, has also enjoyed some success with another energy supplement, Redline, which is sold in two SKUs in 8 oz. bottles. Both Bang and Redline have According to data from Chicago-based market research firm IRI, sales of Redline Energy increased 32 percent over a 52-week period ending on August 12. Overall sales for the company's non-aseptic energy drinks were up over 300 percent during the timeframe, reaching over $141 million. VPX brands are sold primarily in convenience stores and fitness/nutritional retailers, such as GNC, and gyms.

The company has faced scrutiny over its product health claims in the past. In April 2015, the company received a warning letter from the FDA over use of an adulterated ingredient in its Redline White Heat and MD2 Meltdown supplements. Redline was also

the subject of media attention in 2008 after four Florida middle school students were hospitalized with elevated heart rates and sweating after sharing a can of Redline. The incident led to a ban on certain energy drinks by Broward County Public Schools.

Vital and Monster Energy have prior legal history: In 2010, VPX won a partial summary judgement against Monster's parent company, Hansen Beverage Company, after being sued for false advertising, libel and unfair competition in California.

Vital Pharmaceutical did not respond to a request for comment on this story.