M.D. SCULLY (SBN: 135853)
mscully@grsm.com
TIMOTHY K. BRANSON (SBN: 187242)
tbranson@grsm.com
JUSTIN D. LEWIS
jlewis@grsm.com (SBN: 239686)
GORDON REES SCULLY MANSUKHANI LLP
101 W Broadway, Suite 2000
San Diego, CA 92101
Phone: (619) 230-7441
Fax: (619) 696-7124

Attorneys for defendant
VITAL PHARMACEUTICALS, INC., d/b/a VPX SPORTS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE BANG ENERGY DRINK MARKETING LITIGATION | Case No. 4:18-cv-05758-JST-RMI<br>*(Consolidated with 4:18-cv-06300)*<br><br>**DEFENDANT'S MOTION TO DISMISS AND STRIKE SECOND AMENDED CONSOLIDATED COMPLAINT**<br><br>Complaint filed: September 19, 2018 |

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ....................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 2

I. STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(a)(3)) ....................................... 2

II. INTRODUCTION .......................................................................................... 2

III. FACTS ...................................................................................................... 3

IV. ARGUMENT ............................................................................................... 3

A. Plaintiffs Still Cannot Plead Any Plausible Theory of Liability Based On Unmet Expectations About The Effects Or Benefits Of Drinking Bang. ............... 3

B. This Fifth Complaint Renews Plaintiffs' Admissions That Bang Contains Creatine. ........................................................................................ 6

C. All Claims For Equitable Relief Require Dismissal With Prejudice. ..................... 9

D. Plaintiffs Plead No Basis For Punitive Damages. ............................................ 10

E. The Court Should Strike Amendments That Violate Its Order. .......................... 11

V. CONCLUSION ............................................................................................ 13

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Sys. v. Acheampong*,
No. 17-cv-2749-CW (RMI), 2018 U.S. Dist. LEXIS 224782 (N.D. Cal. Nov. 15, 2018) ....... 12

*Algarin v. Maybelline, LLC*,
300 F.R.D. 444 (S.D. Cal. 2014) ........ 6

*Aparicio v. Comcast, Inc.*,
274 F. Supp. 3d 1014 (N.D. Cal. 2017) ........ 11

*Bitton v. Gencor Nutrientes, Inc.*,
654 Fed. App'x 358 (9th Cir. 2016) ........ 5

*Hardin v. Wal-Mart Stores, Inc.*,
813 F. Supp. 2d 1167 (E.D. Cal. 2011) ........ 12

*In re Macbook Keyboard Litig.*,
No. 5:18-cv-02813-EJD, 2020 U.S. Dist. LEXIS 190508 (N.D. Cal. Oct. 13, 2020)............. 10

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ........ 13

*Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda Cty.*,
462 P.3d 461 (Cal. 2020) ........ 10

*Robinson v. J.M. Smucker Co.*,
No. 18-cv-04654-HSG, 2018 U.S. Dist. LEXIS 78069 (N.D. Cal. May 8, 2019) ................... 10

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........ 10

*Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc.*,
No. 14-cv-00362-BLF, 2014 U.S. Dist. LEXIS 101657 (N.D. Cal. July 24, 2014)................. 10

*Xerox Corp. v. Far W. Graphics, Inc.*,
No. C-03-4059-JFPVT, 2004 U.S. Dist. LEXIS 20579 (N.D. Cal. Oct. 6, 2004).................... 11

**Statutes**

CAL. CIV. CODE § 3294 ........ 10, 11

**Rules**

FED. R. CIV. P. 12 ........ 2, 10, 13

FED. R. CIV. P. 15 ........ 13

FED. R. CIV. P. 16 ........ 11, 13

FED. R. CIV. P. 23 ........ 5

FED. R. EVID. 201 .......... 7

**Other Authorities**

THE OXFORD DESK DICTIONARY AND THESAURUS: AM. ED. (Berkley 1997) .......... 9

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that defendant VITAL PHARMACEUTICALS, INC., d/b/a VPX SPORTS, a Florida corporation ("VPX"), moves to dismiss and strike the second amended consolidated complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure. Per the Court's current calendaring notes, the motion is filed without a noticed hearing date.

VPX seeks an order striking portions of the complaint and dismissing the action with prejudice. The motion is based on this notice, the following memorandum of points and authorities, the pleadings on file in this matter, and such other matters as may be presented before or at the hearing of the motion, if any.

Dated: October 19, 2020

GORDON REES SCULLY MANSUKHANI, LLP

By: *s/ Justin D. Lewis*
M.D. Scully
Timothy K. Branson
Justin D. Lewis
Attorneys for defendant
VITAL PHARMACEUTICALS, INC., d/b/a VPX Sports

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(A)(3))

Whether the case should be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6)?

Whether portions of the complaint should be stricken for violating the Court's order against unauthorized pleading amendments?

## II. INTRODUCTION

After this Court dismissed their previous complaint in total, Plaintiffs are back again with a fifth complaint that ignores what the Court asked them to do and does exactly what the Court ordered them not to.

The Court dismissed Plaintiffs' fourth complaint because it "failed to allege that VPX has made any actionable misrepresentation regarding the content or effect of Bang drinks." Dkt. 144 at 4. The Court specifically delineated the confines of the leave it afforded Plaintiffs. They got another chance to try pleading actionable misrepresentations about the disputed ingredients, and no more. *Id*. at 7 ("Because…Plaintiffs might be able to allege more specific misrepresentations regarding creatine," "the Court grants leave to amend"); *id*. at 6 (granting leave merely to assert "more specific statements that could potentially cure the deficiencies discussed above" concerning BCAA and CoQ10 misrepresentation theory). The Court expressly ordered Plaintiffs not to try other amendments. *Id*. at 8 (amendments "must be limited to curing the deficiencies identified in this order").

Despite the Court's direction, their new complaint does not allege any new actionable misrepresentations about Bang, its effect, or its ingredients that Plaintiffs ever read or relied on. It merely reprises the same allegations the Court already found to be non-actionable and insufficient, this time limited to the sole ingredient left in dispute, Bang's "Super Creatine."

Those allegations fail on the same grounds as before. Plaintiffs cannot plausibly allege missing any effect or benefit of drinking Bang that they reasonably expected but did not realize, much less based on any VPX representation they read in the labeling or anywhere else. VPX promised Plaintiffs nothing more than the delicious jolt of energy they liked enough to keep on

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

buying more Bang.

And the latest complaint renews the previous one's elaborate admissions that Bang contains creatine, precluding anew any plausible claim that it doesn't, no matter how many times Plaintiffs now repeat, embolden, and underline the same assertions to the contrary already rejected by this Court.

Meanwhile, Plaintiffs abused the leave the Court granted. Against the Court's express order not to, their newest complaint includes a potpourri of amendments that have nothing to do with curing the lack of any actionable misrepresentation about the effect or contents of Bang. They exploited the Court's indulgence to try slipping in a new liability theory and a new damages claim, among other unauthorized amendments, all in frank violation of the dismissal order. Such amendments are legal nullities that must be stricken.

After five complaints, Plaintiffs' inability and failure to amend in keeping with the Court's careful guidance requires dismissal with prejudice. Now in year three of litigation, they still have not articulated a plausible liability theory because they simply cannot.

## III. FACTS

VPX makes numerous varieties of energy drink beverages marketed as Bang®. Dkt. 147, ¶¶ 1, 39-40. Plaintiffs Ismail Imran, Zach Hess, and Kuumba Madison contend that the products' labeling misled them somehow. Imran alleges that he made "various" purchases of Bang products over the course of "2017 to 2018" "in and near San Francisco and Sacramento County." *Id*. at ¶ 26. Hess likewise claims to have purchased the products at "various stores" in New York "over the course of 2018." *Id*. at ¶ 30. Madison, of California, claims to have purchased "from various stores," including an internet purchase in 2018. *Id*. at ¶ 34. Plaintiffs contend that they typify consumers of Bang products. *Id*. at ¶ 86.

Their newest complaint is the fifth. Dkts. 1, 13, 79, 116, 147.

## IV. ARGUMENT

### A. Plaintiffs Still Cannot Plead Any Plausible Theory of Liability Based On Unmet Expectations About The Effects Or Benefits Of Drinking Bang.

Plaintiffs' latest complaint fails yet again to advance an actionable or plausible theory of

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

liability based on supposed deception about the effects or benefits of drinking Bang. That theory has been Plaintiffs' main charge since this case's inception, given that a particular ingredient can only matter to whatever extent a consumer expects it to make a difference to his experience of the drink. Yet, the allegations corresponding to the effects theory are so abridged compared to the previous complaint that it is unclear whether Plaintiffs even mean to resurrect it. Just in case, VPX moves again to dismiss every claim predicated on such a theory.

Like last time, Plaintiffs have again failed to allege that they read, let alone relied upon, any actionable statement in the labeling or marketing of Bang that promised or implied any benefits that they did not receive, whether from Super Creatine, other ingredients, or the energy drinks as a whole. Ignoring two Court orders, they again reassert dead-letter allegations challenging non-actionable puffery about potency. Dkt. 147, ¶¶ 5, 26(b), 26(c), 30(b), 30(c), 34(b), 34(c), 49, 73 (re-alleging the potency puffery); dkt. 144 at 4 (Court recounted its original finding that "the term 'potent,' [and] the statement 'power up with BANG's potent brain & body-rocking fuel" "are non-actionable puffery"); *id*. at 5 (Court then renewed its puffery ruling in dismissing Plaintiffs' fourth complaint: "As with the [third complaint], all of the alleged misrepresentations regarding the effect these ingredients might have on a consumer of Bang" "are non-actionable puffery").[1]

Put another way, nothing in their latest complaint pleads, much less plausibly, what effect beyond a delicious jolt of energy Plaintiffs somehow reasonably expected but did not realize. They again gesture at vague generalities like unspecified "health and wellness benefits" and unpled "physiological effects," but they do not plead that they expected any given effect. Dkt. 147, ¶¶ 26, 27, 30, 31, 34, 35. Nor do they allege reliance on any statement of VPX that could have plausibly led them to such expectations. *Id.*

Similarly, Plaintiffs' new complaint reprises their earlier nods at various "exercise performance" concepts like "tolerat[ing] heavy training loads," "enhancing rehabilitation,"

---

[1] The puffery includes these statements, without limitation: (1) "Potent," (2) "Power up with Bang's potent & body-rocking fuel," and (3) "POTENT BRAIN AND BODY ROCKING FUEL." There is no requirement that a plaintiff must reassert dead-letter allegations in disrespect of interlocutory dismissal orders to preserve an issue for appellate review.

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

"reducing severity of injury," and "promot[ing] greater fitness gains." Dkt. 147, ¶ 7. It also talks about "cognitive performance" in the treatment of "neurodegenerative diseases, such as Parkinson's and Huntington's disease." *Id*. at ¶ 8. But, as before, none of the Plaintiffs allege they reasonably expected any of that from drinking Bang, nor do they plead a plausible basis for such expectations. They certainly do not point to their reliance on any representations of VPX about those matters. The reason is simple: Bang's labeling neither makes nor implies promises about any of it. *Id*. at ¶ 42 (labeling example).

Instead, there remains no dispute that the purpose of an "energy drink" (dkt. 147, ¶ 1) is simply to stimulate and energize the brain and body. In fact, the latest complaint renews Plaintiffs' earlier admission that is all reasonable consumers expected. *Id*. at ¶ 9 (consumers looking for "ways to fuel their body and brain"); *id*. at ¶ 47 (consumers believe "they fuel the brain and body"); *see* dkt. 116, ¶ 44 (alleging tendency to "deceive or confuse reasonable consumers" expecting products "to 'fuel' physical and mental activities"). Nowhere in five complaints have Plaintiffs ever yet alleged either that they or reasonable consumers expected some other benefit from the products or their ingredients that they did not get.

Thus, energy and stimulation could be the only type of beneficial effect at issue, given that Plaintiffs fail again to plead any other. Yet, nowhere do Plaintiffs allege that drinking Bang energy drinks ever once failed to stimulate or energize them. *Bitton v. Gencor Nutrientes*, Inc., 654 Fed. App'x 358, 364 (9th Cir. 2016) (affirming dismissal of warranty claim where "complaint does not allege that the Testofen products cannot increase free testosterone levels, nor does it even assert that the product failed to do so for the named Plaintiffs").

Moreover, apart from those repeated failures to plead reasonable deception, Plaintiffs' multiple repurchases of Bang energy drinks over months or years affirmatively *foreclose* any plausible contention that they did not realize whatever mental or physical effect or benefit they expected, whether that was energy and stimulation or something else their complaint does not plead. Dkt. 147, ¶¶ 26, 30, 34 (admitting multiple repurchases over significant timespans up to two years).

These Plaintiffs appoint themselves under Rule 23(a) as typical of consumers whose

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

claims will rise or fall on the reasonable consumer standard, but reasonable consumers do not keep repurchasing products that do not deliver reasonably expected benefits for months or years. In that way, Plaintiffs' histories of multiple repurchases raise a strong inference that the products met their expectations as the self-appointed typical consumers, meaning they got what they bargained for, were not deceived, and have no injury. *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 454 (S.D. Cal. 2014) ("it sounds in common sense that making repeat purchases indicates that the customer's expectations have been met").

After five complaints, Plaintiffs' liability theory remains not just unpled under Rules 9(b) and 8, but implausible by virtue of the labeling and their own multiple repurchases, requiring dismissal with prejudice on those bases alone.

**B. This Fifth Complaint Renews Plaintiffs' Admissions That Bang Contains Creatine.**

In three ways, Plaintiffs' latest complaint again fails to plead plausible claims based on the supposed absence of creatine. First, in their own longstanding theory of this case, the materiality of a given ingredient's presence or absence depends on the resulting effect reasonable consumers plausibly expect it to confer when they drink Bang. As outlined above, they still have not asserted any unmet, plausible expectations about the effect or benefit of Bang or its ingredients, much less creatine. Still, even if the presence or absence of an ingredient could be material on its own, Plaintiffs' fifth complaint fares no better than the fourth in a second way.

Just as before, it fails to plausibly allege that Bang fails to deliver creatine. Instead, it once again precludes its own theory by alleging the opposite, expressly admitting in black-and-white that Bang's creatyl L-leucine in part "consists of creatine." Dkt. 147, ¶ 58. It also appends, and thereby incorporates, testimony that creatyl L-leucine "is creatine bonded to L-leucine." *Id.* at p. 32 (Ex. A, ¶ 5).

These latest admissions resound with those of the previous complaint, where Plaintiffs expressly conceded that "there is…creatine in…creatyl L-leucine" (dkt. 116, ¶¶ 46-47), and that Bang confers a "dose of creatine." *Id.* Elaborating and committing fully to those admissions, Plaintiffs even performed a specific calculation of how much creatyl L-leucine would constitute

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

a beneficial amount of creatine. *Id*. at ¶ 50 (detailing how much Bang "someone would have to consume…to obtain any benefits from creatine.").

As matters of Plaintiffs' own pleading on the docket of this case, these previous admissions warrant judicial notice in deciding this motion. FED. R. EVID. 201; dkt 116, ¶¶ 46-47, 50. In fact, the Court invoked the creatine admissions in dismissing the previous complaint. Dkt. 144 at 7 (describing admission "that the drinks do in fact contain creatine, if in very small quantities"); *id*. ("because the FACAC undercuts this [no creatine] claim by admitting that creatyl L-leucine contains creatine, Plaintiffs have failed to state any claims based on misrepresentations as to the presence or amount of creatine") (internal citation omitted). The Court did not grant Plaintiffs leave to attempt a plausible contradiction of their own detailed admissions, but to try again to allege a misrepresentation about Bang's effects that might be actionable despite them. As set out above, they did not and cannot. *See* part A, *supra*.

So, Plaintiffs' concessions in the current and previous complaint foreclose their latest bid to plausibly allege that Bang somehow fails to deliver creatine. To be sure, Plaintiffs added more repetitions of their years-old allegations that Bang has no creatine or that creatyl L-leucine is not creatine. Some are now emboldened and underlined. Now matter how insistent, those assertions do not save this fifth complaint from dismissal any more than they did the fourth. The Court already read and found them insufficient last time. *E.g*., dkt. 116, ¶ 3 (dismissed complaint asserted "products have no creatine at all," but "really creatyl L-leucine," which is somehow "not creatine," "does not have the benefits of creatine," and a "sham"); *compare* dkt. 147, ¶ 3 (new repetition of same allegations).

Plaintiffs' concessions that Bang contains creatine compel dismissal just as they did before. The Court can stop the analysis right there. Still, the new complaint dissolves the creatine theory in another, third way. It contains additional admissions, both explicit and performative, that consumer creatine takes multiple chemical forms, canceling its theory's own premise that only one, some Platonic Form, can occupy the shelves.

Indeed, products labeled with the colloquial or commercial name of a vitamin, mineral, or dietary supplement often deliver the corresponding chemical substance in forms combined or

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

bonded with other molecules or compounds, whether by necessity or to improve the body's uptake. Knowing that only takes a walk down the vitamin aisle or a look in the medicine cabinet. Consumer calcium is technically calcium carbonate. Magnesium supplements are oxides of that element. Zinc, too, is given as zinc oxide, or as zinc gluconate, zinc citrate, and other variants. Selenium is sold in the form of sodium selenate. Ascorbic acid is better known by consumers as Vitamin C, but is available in several chemical forms. For example, a product named "Super Vitamin C" is sold on the website where plaintiff Madison shops. Dkt. 147, ¶ 34. According to its label, it contains not ascorbic acid, but a variant called calcium ascorbate.[2]

Legions of such examples populate the drugstore, vitamin shop, and nearly every consumer's kitchen or bathroom. Consumer awareness that a given supplement may take multiple forms must be especially widespread among those who make a point of actively tailoring their consumption to products they believe "would provide health and wellness benefits" and "physiological effects," like these Plaintiffs all claim. Dkt. 147, ¶¶ 26-27, 30-31, 34-35; *id*. at ¶ 52 (consumers "regularly seeking to improve their body and brain health").

Plaintiffs admit that consumer creatine supplements are no exception, but confirm and illustrate the rule. Conceding as much, they refer to creatine and other products that "come in many forms." Dkt. 147, ¶ 8. Likewise, their allegations incorporate an official declaration of the International Society of Sports Nutrition, which flatly asserts "[m]any forms of creatine exist in the marketplace," before listing eleven chemical "formulations and combinations" the society describes as merely "some" of them. Dkt. 147 at 3, n. 3 (incorporating "International Society of Sports Nutrition Position Stand: Creatine Supplementation And Exercise," J. INT. SOC. SPORTS NUT. (2007, 4:6), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2048496/ (last accessed Oct. 17, 2020)).

But Plaintiffs didn't just talk the talk. When their own scientist performed what the complaint admits was "testing for 'creatine'" (dkt. 147, ¶ 57), they sent him looking variously for such compounds as creatine nitrate, creatine monohydrate, creatine HCL, and creatinine. *Id*. at

[2] https://www.vitaminshoppe.com/p/super-vitamin-c-quercetin-bioflavonoids-120-vegetarian-capsules/nsl0001 (last accessed Oct. 19, 2020)

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

p. 39 (Ex. B).

Among the forms of consumer creatine, the complaint trumpets creatine monohydrate above all as the paradigm, so well regarded by consumers that it made such "products with creatine" "popular and widely available in stores across the United States." Dkt. 147, ¶ 7. Yet, just as its chemical name indicates, creatine monohydrate would be, by Plaintiffs' reasoning, not creatine but a different substance. The "monohydrate" appellation means that each molecule of creatine is paired to one molecule of water, making the chemical formulation of creatine monohydrate different from simple creatine. THE OXFORD DESK DICTIONARY AND THESAURUS: AM. ED. (Berkley 1997) 381 (hydrate: "compound of water combined with another compound or an element"); *id*. at 521 (mono-: "one; alone; single").

In other words, Plaintiffs' hyper-pedantic critique of Bang's creatine is so divorced from consumer reality that it would indict their own gold standard for consumer creatine. Of course, despite the differing chemical formulas, their complaint admits that creatine monohydrate supplements are indeed "products with creatine." Dkt. 147, ¶ 7. That concession parallels their multiple similar admissions that "there is…creatine in…creatyl L-leucine," which "consists of creatine" in part and provides a "dose of creatine." *Id*. at ¶ 58; dkt. 116, ¶¶ 46-47.

In sum, Plaintiffs' latest complaint doesn't just renew their previous elaborate admissions that Bang contains creatine. It defeats their own premise that consumer creatine must take only one chemical form. The creatine theory requires dismissal anew, equally as before.

### C. All Claims For Equitable Relief Require Dismissal With Prejudice.

The UCL and FAL claims in total, along with all of the other demands for restitution, injunction, or other equitable relief, require dismissal because Plaintiffs do not allege, much less plausibly, an indispensable prerequisite: the inadequacy of legal remedies. Instead, they assert that their purported injuries are not just subject to legal remedies under contract, but otherwise redressable by money damages. *E.g*., dkt. 147, ¶¶ 100 (damages); *id*. at ¶¶ 145-151 (express warranty claim); *id*. at ¶¶ 28, 32, 36 (purported injuries purely monetary); *id*. at ¶¶ 105, 109, 115, 121 (simply "lost money or property"). New controlling precedent compels dismissal in these circumstances.

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

The Ninth Circuit recently affirmed the Rule 12(b)(6) dismissal of all claims for equitable restitution due to a consumer plaintiff's pursuit of damages and her failure to allege the absence of an adequate legal remedy. *Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 844 (9th Cir. 2020). Rejecting the plaintiff's arguments about the broad availability of equitable relief under state law, the court rested its decision on the principle, "fundamental…for well over a century," "that state law cannot expand or limit a federal court's equitable authority." *Id*. at 841. Accordingly, "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies," applied with full force to preclude the plaintiff's UCL and CLRA demands for restitution. *Id*. at 844.

Here, the same principle equally requires dismissal with prejudice of these Plaintiffs' claims for any equitable remedies, including both restitution and injunctive relief. *In re Macbook Keyboard Litig*., No. 5:18-cv-02813-EJD, 2020 U.S. Dist. LEXIS 190508, at *14 (N.D. Cal. Oct. 13, 2020) (invoking *Sonner* to dismiss with prejudice all claims for "injunction, restitution, or other equitable relief"). And because the UCL and FAL claims sound entirely in equity, those causes of action warrant complete dismissal. *See Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda Cty*., 462 P.3d 461, 464 (Cal. 2020) ("[T]he causes of action established by the UCL and FAL…are equitable in nature").

**D. Plaintiffs Plead No Basis For Punitive Damages.**

Plaintiffs seek punitive damages in connection with the CLRA cause of action. Dkt. 147, ¶ 100. Under the CLRA, punitive damages are limited to circumstances of "oppression, fraud, or malice." CAL. CIV. CODE § 3294(a). Yet, "a company simply cannot commit willful and malicious conduct – only an individual can." *Robinson v. J.M. Smucker Co.,* No. 18-cv-04654-HSG, 2018 U.S. Dist. LEXIS 78069, at *17-18 (N.D. Cal. May 8, 2019) (quoting *Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc*., No. 14-cv-00362-BLF, 2014 U.S. Dist. LEXIS 101657, at *20-21 (N.D. Cal. July 24, 2014); CAL. CIV. CODE § 3294(b) ("[w]ith respect to a corporate employer," the conduct "must be on the part of an officer, director, or managing agent of the corporation").

Plaintiffs do not plead any facts to support an award of punitive damages because they do

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

not allege that any individual committed willful and malicious conduct sinking to the standard of Civil Code section 3294(a). *See Xerox Corp. v. Far W. Graphics, Inc.*, No. C-03-4059-JFPVT, 2004 U.S. Dist. LEXIS 20579, at *7 (N.D. Cal. Oct. 6, 2004) (dismissing claim for punitive damages because plaintiff "fails to allege any conduct by an officer, director or managing agent…sufficient to support the imposition of punitive damages"); *see Aparicio v. Comcast, Inc.*, 274 F. Supp. 3d 1014, 1032 (N.D. Cal. 2017) (Tigar, J.) (summary judgment of punitive damages claim where plaintiff deposed no "managing agent").

Here, the only allegations that mention a VPX officer fall well short of section 3294(a)'s standard. Dkt. 147, ¶¶ 12, 15-19.[3] They do not plausibly allege any fraud, oppression, or malice on an officer's part corresponding to the liability theory. *Id.* Most of the allegations leveled at Jack Owoc and Marc Kesten are anodyne, generic, and bear little or no relation to the liability theory, nor even appear to concern Bang, as opposed to other products in the VPX portfolio. *Id.* at ¶¶ 18(a), (b), (e), (f), (g), 15-17, 12. None amount to allegations that either personally set out to formulate or market an energy drink that shortchanges consumers or fails to stimulate or energize, much less that any such unalleged concrete acts they supposedly took in that regard were conducted maliciously, oppressively, or fraudulently. *Id.*; *id*. at ¶¶ 18(c), (d), 19. The CLRA's demand for punitive damages and the corresponding prayer for such relief therefore require dismissal.[4]

**E. The Court Should Strike Amendments That Violate Its Order.**

Plaintiffs abused the Court's leave to file the latest complaint by inserting an array of amendments not just prohibited by the Court's most recent dismissal order, but never supported by even an attempt to show diligence or good cause. Dkt. 144 at 8; FED. R. CIV. P. 16(b).

Now in year three of a case that solely concerns supposed misrepresentations, Plaintiffs are trying to slip in (1) a new theory of liability for omissions, as well as (2) a new claim for punitive damages under New York law, (3) changes to their class allegations, and (4) several

---

[3] Apart from the reference to Mr. Owoc's experience teaching science, paragraph 17 consists of unauthorized amendments that should be stricken. *See* part E, *infra*.

[4] The latest complaint's new demand for punitive damages under New York law violates the Court's dismissal order and must be stricken. *See* part E, *infra*.

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

other amendments that have nothing to do with curing the deficiencies that prompted the Court to dismiss their previous complaint.

Those deficiencies were Plaintiffs' failures to plead "any actionable misrepresentation[s] regarding the content or effect of Bang drinks." Dkt. 144 at 8. Far from supposedly curing those defects, each paragraph of the latest complaint appearing in the schedule below is an unauthorized amendment in bald violation of the Court's order:

| **Paragraphs** (whole paragraphs except as noted) | **General Topic** |
|---|---|
| 124, 125, 126, 127, 128, 129, 133, 134, 137 | New N.Y. G.B.L. § 349 allegations, including new omission theory and new demand for punitive damages |
| 69, 70 | New assertions of omission theory and special knowledge |
| 65, 66, 67, 68, 71, 74 | Assorted new allegations about purported reliance, sales, profits, deception |
| 17 (except reference to "former high school science teacher") | New allegations concerning VPX officer |
| 79, 81, 83 (each to the extent of alleging class periods "[d]uring the fullest period allowed by law") | Changes to class allegations to include previously unpled class periods |
| 79 ("Pursuant to Rules 23(b)(2), (b)(3) and, as applicable, (c)(4), of the Federal Rules of Civil Procedure") | New allegation pertaining to types of nationwide classes supposedly suitable for certification |
| 85(d) | New assertion of injunctive, declaratory, or other equitable relief as purported common question |

All of the new complaint's unauthorized amendments are nullities and without legal effect. *Adobe Sys. v. Acheampong*, No. 17-cv-2749-CW (RMI), 2018 U.S. Dist. LEXIS 224782, at *18-20 (N.D. Cal. Nov. 15, 2018) (unauthorized amendment "has no legal effect"); *Hardin v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 1167, 1181 (E.D. Cal. 2011) (amendment made "without

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

leave of court or consent of the opposing party…is a nullity and without legal effect"). The Court should therefore strike them under Rule 12(f).

If this sounds familiar, it should. To review, the deadline for Plaintiffs to amend their pleadings expired long ago in February 2019. Dkt. 41. Four months later in June 2019, Plaintiffs moved to amend their complaint despite the long-expired deadline, claiming amendment was necessary due to the consolidation of litigation. Dkt. 54. Plaintiffs exploited the occasion to draft numerous new allegations that had nothing to do with consolidation, effectively seeking to set aside the scheduling order.

As the Court ruled, plaintiffs who seek to amend despite a contrary scheduling order must make an affirmative Rule 16(b) showing of good cause, which "primarily considers the diligence of the party seeking the amendment." Dkt. 74 at 3 (quoting *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 609 (9th Cir. 1992)). The Court denied Plaintiffs leave to set forth new factual allegations or new legal claims, finding no good cause to permit amendments unrelated to consolidation that they could have pleaded earlier. *Id*. at 5-7.

This time is much worse. In the third year of litigation, Plaintiffs never even moved for leave to plead a new liability theory, a new damage claim, or the other unauthorized additions in their fifth complaint. They didn't bother asking because the amendments cannot be supported by any showing of diligence and good cause at this late date. Instead, they quietly inserted all the new material in frank disrespect of the Court's dismissal order, which expressly barred Plaintiffs from attempting any amendments except those "limited to curing the deficiencies identified in this order." Dkt. 144 at 8.

The unauthorized amendments do not just lack Court authorization, but flout the Court's prohibition. They should be stricken for defying the Court's order and violating Rules 16(b) and 15(a).

## V. CONCLUSION

After five complaints, Plaintiffs have failed again to plead their liability theory, let alone plausibly. Dismissal with prejudice is warranted. VPX respectfully asks the Court to grant the motion.

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

Dated: October 19, 2020

GORDON REES SCULLY MANSUKHANI, LLP

By: *s/ Justin D. Lewis*
M.D. Scully
Timothy K. Branson
Justin D. Lewis
Attorneys for defendant
VITAL PHARMACEUTICALS, INC., d/b/a VPX Sports

**CERTIFICATE OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the action. My business address is Gordon Rees Scully Mansukhani, 101 W. Broadway, Suite 2000, San Diego, CA 92101. My electronic mail address is jlewis@grsm.com. On October 19, 2020, I served the foregoing document as follows:

☑ **BY ELECTRONIC SERVICE THROUGH THE CM/ECF SYSTEM** which automatically generates a Notice of Electronic Filing at the time said document is filed to all CM/ECF Users who have appeared in this case. Service with this NEF constitutes service pursuant to FRCP 5(b)(E).

**Counsel for Plaintiffs ISMAIL IMRAN and ZACH HESS:**

Reuben D. Nathan
NATHAN & ASSOCIATES, APC
2901 W. Coast Highway, Suite #200
Newport Beach, CA 92663
Phone: (949) 270-2798
Fax: 619-330-1819
Email: rnathan@nathanlawpractice.com

Joel D. Smith
Lawrence T. Fisher
Yeremey O. Krivoshey
BURSOR & FISHER, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Phone: (925) 407-2700
Fax: 925-407-2700
Email: jsmith@bursor.com
ltfisher@bursor.com
ykrivoshey@bursor.com

**Counsel for Plaintiff/Movant KUUMBA MADISON (Action 18-cv-06300):**

Jonathan Shub
Kevin Laukaitis
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Phone: 215-238-1700
Fax: 215-238-1968
Email: jshub@kohnswift.com
klaukaitis@kohnswift.com

Nick Suciu, III – Pro Hac Vice
BARBAT, MANSOUR & SUCIU PLLC
1644 Bracken Rd.
Bloomfield Hills, MI 48302
Phone: 313-303-3472
Fax: 248-698-8634
Email: nicksuciu@bmslawyers.com

Adam A. Edwards – Pro Hac Vice
Gregory F. Coleman – Pro Hac Vice
Mark E. Silvey – Pro Hac Vice
Justin G. Day – Pro Hac Vice
GREG COLEMAN LAW PC
800 S Gay Street, Suite 1100
Knoxville, TN 37929
Phone: 865-247-0080
Fax: 865-522-0049
Email: adam@gregcolemanlaw.com
greg@gregcolemanlaw.com
mark@gregcolemanlaw.com
justin@gregcolemanlaw.com

Rachel Lynn Soffin
MORGAN AND MORGAN
Complex Litigation Group
201 N. Franklin Street, 7th Floor
Tampa, FL 33602

Phone: 813-223-5505
Fax: 813-222-4787
Email: rachel@gregcolemanlaw.com

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on October 19, 2020 at San Diego, California.

*s/ Justin D. Lewis*
Justin D. Lewis

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

1175873/51370474v.1

-16-

DEFENDANT'S MOTION TO DISMISS AND STRIKE

Case No. 18-cv-05758
Case No. 18-cv-06300